We have come to the last case of the day. It is appeal number 21-2028 and it's Dianne Donaldson v. Johnson & Johnson and Mr. Meyer. Thank you, your honor. May it please the court. I am Mike Meyer. I'm here to represent the plaintiffs in this case, Dianne Donaldson and Dale Donaldson. This is a case in which the district court granted a summary judgment in favor of the defendants, Johnson & Johnson and Ethicon. I'm going to dispense with a recitation of the usual rules that I'm sure you're all familiar with in the summary judgment scenario and try to make this brief by stating what we believe are the reasons that there was a question of fact for the jury on each and every one of the elements of the case. Mr. Meyer, excuse me. Before you go into the merits, a quick question about diversity jurisdiction here. Are both of the plaintiffs separately seeking more than $75,000 in damages? Yes. Okay, thank you. If I could start you off, I'd appreciate it because the weakest part of Ms. Donaldson's case is demonstrating the absence of secondary causes. Could you provide us citations to the best evidence in the record regarding the absence of secondary causes? This is a problem because her treating doctor seems to have conceded that there are possibly secondary causes, such as the vaginal atrophy, and there was no witness who said there were no secondary causes, but her treating doctor said that it possibly was the vaginal atrophy. Well, I'm not sure that he said that it was. He might have said... No, I said possibly was. Yes. To that issue, I would say two things. First, Dr. Nayak, who was the treating physician who gave what I will admit was a horrible deposition on behalf of the plaintiff, he did say in response to a question from me, did you see anything in the records that indicates to you that the exposure of the mesh caused the erosion, or was there anything other than that that could have caused the erosion into the bladder and other tissues? And his answer was, I have no indication. Now, that's number one. Number two, to go to number two, we have to kind of go to the first issue, which is whether the district court abused her discretion in striking the entire declaration of Dr. Nayak because it was inconsistent in many respects, admittedly, with his deposition testimony. We've cited, I believe, a Seventh Circuit case that we say stands for the proposition that it was an abuse of discretion for her to strike the entire declaration, but should have perhaps stricken only those parts that were inconsistent with the Can we go back to your answer, initial, the first part of your answer to Judge Rovner? Yes. If we end up agreeing with the judge on the declaration, the district court, what do you have on absence of secondary causes? It seems to me you've pointed to a conflict within Dr. Nayak's deposition because you ask him the question, he says, I don't think I see anything else. The defendant's attorney asks him the question, he says, well, now I've read these records, I know there was some vaginal atrophy, that could be a secondary cause. So where do we have, what else do you have? If you've got no declaration, just assume that for a moment, and you've got conflicting Nayak deposition testimony, what do you have that creates a dispute of fact on the absence of secondary causes? Well, once again, I'm not sure it's inconsistent because at one point he said it was possibly, there was possibly a secondary cause, but no one in the record that I've seen has explained how it was a secondary cause or given any opinion within a reasonable degree of second. Where's your evidence that there's no secondary causes? Well, it's in Dr. Nayak's statement. If we remove his statement. Well, the statement, Your Honor, is in his deposition, not in his, it's in his declaration too, but she struck the declaration, not the deposition. So the testimony I'm referring to was in his deposition, which was not stricken. But he doesn't say there's an absence of secondary causes in the deposition. In fact, he says, the atrophy increases a patient's risk for vaginal erosion of mesh, right? That's the question. He says, yes. And that's not an opinion within a reasonable degree of medical certainty. And I still maintain that his answer in his deposition, that he sees no indication of secondary causes for the erosion, creates a question of fact here. That's what I'm saying. And if the court would kindly draw reasonable inferences in favor of the plaintiff, that should be enough to create an issue of fact. And before you asked me that question, I was about to explain something about the records. So should I continue? To the declaration? You were about to talk about the declaration? Yes, I was. Yes. Thank you. I think it was an abuse of discretion to strike the entire declaration. And the part that we think could be critical in this case is the fact that Dr. Nyack attached to his declaration, his records, medical records pertaining to the care and treatment of Diane qualified surgeons at both Barnes Hospital in St. Louis and Mayo Clinic in Minnesota. And the reason I mentioned that is that unless they're stricken as part of the declaration, I would posit, how does one prove a negative? There was no secondary cause. One of the ways to prove the negative is to show the records and say there's nothing in the records that discloses there was any secondary cause. We have multiple surgical records that show that there was erosion of this mesh into the bladder and other areas. And there is nothing in the records of those surgeons that gives any indication that there was any cause for that mishap other than the product itself. So that's, if one takes that as a reasonable inference. Mr. Meyer? Yes, sir. Along those lines, can I ask you, this erosion of mesh is a known complication. The FDA has known about it for a long time and it's widely disclosed, right? That's true. And a few months ago in the Stark case, which involved the same defendants, very similar products, and in fact, the same defense counsel, we reversed the statute of limitations summary judgment because we were saying that the fact that the erosion occurred, the fact that a known complication occurred was not enough to put the patient on notice that this was a tortious act. She wasn't even on inquiry notice. Given that it's not enough, that erosion is not enough to put somebody even on notice of a potential tort, how would it be enough to infer under Tweedie that it's tortious? Well, Tweedie states, the main part of Tweedie, that a product is defective if it fails to be expected in light of its nature and intended function. And the expectation is that of the ultimate consumer. Tweedie even says that itself. So to say, yes, it's a known complication, that's all well and good. But the question is, did Diane Donaldson, the ultimate consumer, know that? And was it in her field of expectation to think that this product would cause the horrible injury that it caused? The answer to that is no. So it's her expectation. We can have all kinds of medical literature out there all over the place going both ways, saying this is a state-of-the-art product or saying that it isn't. But unless the ultimate consumer, in this case Diane Donaldson, knew that there was a substantial risk, then the result was not within her expectations. I think that's the point that needs to be made. And I hope I answered the court's question. In any event, we have the records. You've used your time and you've used your rebuttal time. I will give you time for rebuttal. And if you wanted to make one quick point, I'll allow that. I was just going to explain the other elements of the Tweedie doctrine. And I can do that later if necessary in my rebuttal. Thank you. Thank you. Ms. Moldovanu? Yes. Did I fracture your name? It's very close. That was a good job. It's Susanna Moldovanu for Ethicon and Johnson & Johnson. May it please the court. The law is straightforward and the facts are undisputed. This case was part of a multi-district litigation proceeding where thousands of plaintiffs were required to and did serve expert reports. These plaintiffs did not. Instead, the plaintiffs here opted to proceed exclusively under Illinois' Tweedie doctrine. This case is just not a Tweedie case. There are two basic elements of a Tweedie-based defect claim. The absence of any abnormal use or reasonable secondary cause. And two, that the products failed to perform in the manner reasonably to be expected given their nature and intended function. You know, the infranting surgeon claims to have followed all manufacturer's instructions. What abnormal use can there be once a device is implanted within the body? The device could be implanted on a plane that was too deep, which is actually what expert opines happened here. So, it could be implanted in a space where it should not have been. And that's what our expert here claims actually happened. But that's just one piece of the puzzle. I'm sorry, that's what? That's just one piece of the puzzle. As the court noted, there's still also other secondary causes that these plaintiffs acknowledge exist and they didn't rule them out. They just simply ignored them. Tweedie just does not apply here and it cannot save plaintiff's claims from dismissal where the injury alleged erosion is not one that is unexpected, but rather is a known, warned of risk of any pelvic mesh device. Erosion is not indicative of any defect and it can have multiple causes and the plaintiffs do not dispute this. I'd like to begin by addressing the district court's decision to strike Dr. Nyack's declaration. While you do it, I would really appreciate it if you could tell us what in the record justified the strike of the entire declaration rather than the parts that were inconsistent with the deposition because that certainly appears to disadvantage the plaintiff because of her lawyer's conduct. Well, your honor, our position is that it doesn't disadvantage the plaintiff at all because all of the material parts of Dr. Nyack's declaration were inconsistent with his deposition. The material parts of Dr. Nyack's declaration were that the devices were defective and that the Tweedie elements were present, but in his deposition, Dr. Nyack testified that he was not opining that the devices were defective, that there were reasonable secondary causes for Ms. Donaldson's injuries, that he did not rule out those reasonable secondary causes, that he did not rule out abnormal use of the devices, and that his only opinion, and those are his words, his only opinion was that the mesh itself can cause complications, erosion into the bladder or vagina, no matter who makes it. The law in this circuit is clear that an affidavit that contradicts the affiant's deposition testimony is so lacking in credibility that it's entitled to zero weight in the summary judgment proceedings unless, unless that is the affiant himself gives a plausible explanation for the discrepancy. So there can be no error or prejudice in striking the entirety of the declaration where the material portions were rightly disregarded and entitled to zero weight in the summary judgment inquiry. Whether you strike the declaration or not, it is entitled to zero weight. So really, you know, whether to strike the- Attached medical records stricken? I'm sorry, your honor? The attached medical record. Were they stricken? I, I, it's not really clear from the court's opinion. That was an issue raised for the first time here today. It didn't seem in the appellate briefs that that was raised, that there was something in the medical records that established the Tweedy elements. We don't see anything in the medical records to establish the Tweedy elements. So there again, even if there were some error in striking those medical records too, there's no error from it because the material portions were inconsistent with Dr. Nyack's deposition and don't establish the claim. If we, if we are, as we're supposed to construe the facts and inferences in the light most Donaldson, why when she says she had no knowledge of any warnings, subject warning about the erosion of mesh, why doesn't that create a tribal issue when your expert, Dr. Greer, testified this erosion is not, not unique. It happens. And so that's to the second element of Tweedy. So plaintiffs must establish both. They must also rule out the reasonable secondary causes. So moving to that you know, plaintiffs must establish that the product failed to perform in the manner reasonably to be expected given its nature and intended function. There's no law to suggest that this reasonableness inquiry is some sort of subjective standard of one individual plaintiff coming and saying well I didn't know this could happen. It's objectively unreasonable for a patient to expect that a medical device implantation surgery is going to be risk-free or that the known risk are not going to materialize. You have to have some sort of evidence in the record to show that there was, there was not reasonable to expect the outcome. Here every, all of the evidence is consistent that erosion is a known risk of all meshes and is not indicative of a defect in the product. The, the appellants agree. Every medical witness agrees. Dr. Greer, the defendant's expert, testified that erosion is not unique to mesh-based procedures. Dr. Schultheis, the implanting physician, agreed that he knew at the time of the implant the devices carried the risk of erosion, pain, scarring, the need for further surgery, and then Dr. Nyack. So basically you're saying everybody agrees except Ms. Donaldson. That's correct. So that, that should not help her. One person's subjective belief shouldn't override all of the entirety of the evidence here because it's a reasonable inquiry. It's a manner reasonably to be expected given its nature, its nature being implanted medical device and its intended function which is something to prepare, to repair stress urinary incontinence or pelvic organ prolapse. It's not reasonable to undergo that type of surgery and to expect that there will be no consequences. Do you have a case about that? No, Your Honor. I don't have one that addresses precisely that sort of factual scenario because frankly. Or this idea of the, the reasonablest idea and her subjective understanding not, not being good enough and she's the plaintiff. I have not found a case that addresses that precise element of Tweedy but frankly this sort of situation just does not come very much in the case law because as a practical matter for complex medical devices it's very hard to make out a Tweedy claim because of the nature of these sorts of procedures that they're, the injuries are often multifactorial and it cannot be said as a matter of common sense as a lay person that the sorts of outcomes that can happen after a surgery are only due to a defective product. It's not the sort of inquiry that can regularly be made so it's not really something that, that appears much in the case law. Well let me ask you about another issue and you may have addressed it but I just want to make sure I fully understand the argument. So Dr. Schulte says I implanted this thing properly there was nothing abnormal about the way I put this thing in and then Dr. Greer comes along and says you know surgical technique could have caused the erosion which suggests some abnormal use. Why isn't that if we're construing everything in the light most favorable to Ms. Donaldson at this stage creating a dispute of fact? Well it's abnormal use but also reasonable secondary causes and I will note too that Dr. Schulte was just asked did you perform it correctly. It wasn't that did you rule out the possibility that this could have occurred. The only evidence on that is Dr. Greer. I'm saying if we can, if we look at this only for the abnormal use prong don't move it over to the secondary causes. They do have some small amount of evidence that there was no abnormal use. Not that it was specifically considered and rejected and ruled out but they do have some small amount of evidence on that abnormal use element but it's insufficient. The plaintiffs here have attempted to shoehorn their case lacking expert testimony into a tweety case but the fact is that there is simply no evidence to support it. The district court correctly granted summary judgment and we respectfully request that its order be affirmed. I see that I'm out of time unless the court has additional questions. Seems not so we will have Mr. Meyer come back and let's see. Uh okay. I appreciate the opportunity your honor. I would like to say first that we haven't mentioned yet here today one important element of the tweety doctrine and that is that if you can show a prima facie case by the elements set forth in the tweety case no expert testimony is necessary to show a defect in the product. So we don't need Dr. Nyack to say the product is defective. We don't need anybody to say that. We only need to show that according to the expectations of the ordinary consumer and if one reads the tweety case that's what it says that this product failed to perform as expected. Diane Donaldson and no ordinary consumer is going to be reading medical literature to find out whether this product has risks of failure. She testified in her deposition that she had no knowledge of such things and if she had she wouldn't have done the surgery. So main point number one we don't need an expert to show defect and number two it's the expectations of the ordinary consumer that is important and number three that entire declaration should not have been stricken because it contains the medical records in fact the only hard medical records we have in the record here in this case that disclose nothing about secondary causes other than the propensities of the mesh itself to cause damage. So unless there are questions I'm they were all stricken. That's my understanding. The ruling was that the declaration was stricken. I don't recall the records being specifically mentioned but they are attached to and part of the declaration and Dr. Nyack's declaration says that those are his records which of course he can rely on rely on under rule 703 and which we think if they're in evidence and not stricken this court can rely on to look at and see that none of those other physicians mentioned anything about secondary causes. Are those the self-same records that Dr. Greer reviewed and spoke about in his two affidavits? I'm sorry I can't answer that. I'd have to compare it. I don't know the answer. I guess my larger question is are the records in evidence otherwise not just through Dr. Nyack's declaration? They're in discovery certainly. Everybody's got them. I don't think they're in the record other than in that declaration. They were attached to the declaration? Yes. And the entire declaration was stricken? Yes, your honor. In total? Yes, your honor. Not a word about exception for medical records or anything else? That's correct, your honor. Well, okay. Thank you very much to both of you and the case will be taken under advisement. Take good care of yourself. Thank you, your honor. Perilous time and this court is now in recess.